Randy LARSON,
Plaintiff-Appellee/Cross-Appellant,

v.

MASSEY–FERGUSON, INC., Defendant.

No. 2–66359.

Court of Appeals of Iowa.

Sept. 21, 1982.

As Corrected Dec. 7, 1982.

Richard G. Langdon and William R. Clark, Jr., of Herrick, Langdon & Langdon, Des Moines, for defendant-appellant/cross-appellee.

Thomas J. Reilly and William J. Conroy, Jr., Des Moines, for plaintiff-appellee/cross-appellant.

SNELL, Judge.

Defendant appeals the judgment for plaintiff in a worker's compensation action under Iowa Code chapter 85 (1975), contending the trial court erred in the following respects (1) by utilizing an incorrect definition of gross negligence; (2) by finding defendant's conduct constituted gross negligence; (3) by rejecting defendant's defense of assumption of the risk and (4) by holding contributory negligence is not available to defendant as a defense when liability is predicated on gross negligence under Iowa Code § 85.20. Plaintiff cross-appeals contending the trial court erred by finding plaintiff's herniated disk was not proximately caused by the accident. Finding no error in either Judge Lavorato's decision or Judge Denato's decision, we affirm both court's findings and conclusions.

Plaintiff, Randy Larson, an employee of defendant, Massey-Ferguson, Inc., was hired to help set up a farm implement show to be held in DeKalb, Illinois. Codefendant, Ron Smith, was plaintiff's immediate supervisor. One of plaintiff's duties was to erect a fence around a portion of the display area. A post-hole digger was obtained from a local Massey-Ferguson dealer and Smith instructed the crew on how to operate the implement. The post-hole digger is essentially a vertical auger, operated by mechanical power transferred through a rotating power take-off (PTO) shaft on the rear of a tractor. The crew was instructed by Smith to "put weight" on the auger to facilitate its penetration of the hard ground. Apparently, Smith intended the crew to put weight on the back part of the auger arm, away from the unshielded, rotating PTO shaft.

Plaintiff sustained his injuries on the morning of September 19, 1975. He had been putting his weight on the front part of the auger when his nylon jacket became caught in the PTO shaft. The spinning motion of the shaft pulled him into the turning auger. Plaintiff's arm became wedged between the auger and the tractor. After plaintiff was pulled loose of the post-hole digger, Smith took him to the DeKalb

hospital where he was treated and released. Plaintiff returned to the job site that afternoon but did not work.

Plaintiff filed suit for common-law damages against his co-worker, Ron Smith, and Massey-Ferguson. The trial court granted summary judgment for Massey-Ferguson as Iowa Code chapter 85 (Iowa Workers' Compensation provisions), constitutes the exclusive remedy for an injured employee against the employer for injuries sustained in a worker-related accident. The trial court reserved ruling on Smith's motion for summary judgment. Plaintiff then amended his petition substituting a claim of gross negligence for ordinary negligence as originally pled against Smith.

By agreement of the parties, the trial was bifurcated and the issue of liability was heard by Judge Lavorato. Judge Lavorato filed a comprehensive decision on January 7, 1980. The court found defendant Smith was guilty of gross negligence, which was the proximate cause of plaintiff's injuries. The court ruled the defense of contributory negligence is not available in cases involving gross negligence. The court also ruled that although assumption of the risk defense is available, "plaintiff not only did not assume the risk under the facts but it would probably be contrary to public policy to hold that he did assume the risk."

The issue of damages was tried to Judge Denato, after Judge Lavorato recused himself upon defendant's motion. Judge Denato held plaintiff had failed to prove his herniated disc was proximately caused by the accident and denied recovery for that condition. The court found, however, the accident was the proximate cause of plaintiff's past and future pain and suffering and the amounts expended for medical treatment of the injury. Judgment of $15,881.35 with interest at seven percent was awarded plaintiff.

## I. Scope of Review

■ This case was tried to the court at law and we review it as such. The trial court's findings of fact have the effect of a special verdict. *Warder & Lee Elevator,*

*Inc. v. Britten,* 274 N.W.2d 339, 340 (Iowa 1979). We are bound by the trial court's findings of fact only if they are supported by substantial evidence in the record. *Briggs Transportation Company v. Starr Sales Company,* 262 N.W.2d 805, 808 (Iowa 1978). A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence even though we would have decided the case differently. *Id.* In evaluating the sufficiency of evidence, we view it in the light most favorable to sustaining the court's judgment. *Id.* Furthermore, we need only consider evidence favorable to the judgment, whether or not the evidence is contradicted. *Id. Grefe v. Ross,* 231 N.W.2d 863, 865 (Iowa 1975). We are not, however, bound by the trial court's conclusions and application of the law. *Miller v. Berkoski,* 297 N.W.2d 334, 337–38 (Iowa 1980).

## II. Gross Negligence

Defendant claims the trial court utilized an incorrect definition of gross negligence and that under the proper definition, defendant was not guilty of gross negligence.

■ The trial court, finding no Iowa Supreme Court definition of gross negligence as used in Iowa Code § 85.20, engaged in a thorough discourse of analogous and relevant, although not necessarily controlling, authority from this and other jurisdictions. The court arrived at the following definition of gross negligence as used in Iowa Code § 85.20:

Gross negligence is defined by the Statute to mean wanton neglect for the safety of others.

Gross negligence as used herein is something substantially more than ordinary negligence which is defined in law as the failure to use reasonable care—the doing of something or the failure to do something that is not up to the standard of conduct one would expect of an ordinarily careful and prudent person under the same or similar circumstances. It falls short, however, of intending to injure or harm.

To constitute in law an act as "wanton neglect," a party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious from his knowledge of surrounding circumstances and conditions that his conduct will naturally and probably result in injury.

We are of the opinion the trial court's definition comports with the definition of gross negligence articulated in the recently decided case of *Thompson v. Bohlken,* 312 N.W.2d 501, 505 (Iowa 1981). In *Thompson,* the court held:

[T]here are three elements necessary to establish "gross negligence amounting to such lack of care as to amount to wanton neglect" under section 85.20: (1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril.

*Id.* Judge Lavorato's definition requires the actor to (a) be aware of the dangerous circumstance, (b) be aware that the conduct will probably result in injury and (c) consciously act without taking measures to protect against the peril. Judge Lavorato's definition of gross negligence required proof of all of the operative elements of gross negligence as defined in *Thompson.* We find no error in the definition.

■ We also find substantial evidence supporting the trial court's conclusion defendant's conduct constituted gross negligence. The evidence is uncontroverted defendant knew of the danger associated with an unshielded PTO shaft and the reasons underlying the subsequently issued OSHA regulations requiring guards to shield the rotating PTO shafts. Defendant knew his order required plaintiff to work in close proximity to the unshielded PTO shaft and that injury was probable whenever working near unshielded moving parts. This is evident in that defendant warned his crew to stay clear of the moving portions of the PTO. Despite the obvious danger associated with an unshielded PTO shaft, defendant instructed his crew to put weight on the auger, which required them to work close to the PTO. Thus, defendant consciously disregarded the obvious peril in ordering his crew to put weight on the auger. We find the evidence is sufficient to support the trial court's conclusion on the issue of gross negligence.

■ We also note defendant's claim the trial court committed reversible error by relying on the criteria in *Kerrigan v. Errett,* 256 N.W.2d 394 (Iowa 1977) is without merit. The *Kerrigan* court established the common law requirements to impose liability on a co-worker for a work-related accident. *Id.* at 397. We agree, however, that the principles in *Kerrigan* do not govern this action. Since the injuries were sustained in 1975, the applicable authority is Iowa Code § 85.20 (1975). *See id.* at 396. This section limits a co-worker's liability to another worker to instances of gross negligence by the co-worker. *Moose v. Rich,* 253 N.W.2d 565, 571–72 (Iowa 1977). *Kerrigan,* on the other hand, was not so limited, as only ordinary negligence had to be proved. *Kerrigan,* 256 N.W.2d at 397. We find no reversible error in the trial court's reference to *Kerrigan* as the court still required proof of gross negligence. If anything, the court's reference to the *Kerrigan* criteria increased the plaintiff's burden of proof by requiring proof of facts not required under Iowa Code § 85.20. Error, if any, herein was not prejudicial to the appellant. *Cf. Smith v. J.C. Penney Co.,* 260 Iowa 573, 588, 149 N.W.2d 794, 803 (Iowa 1967).

### III. Contributory Negligence

■ Defendant claims the trial court erred by rejecting its proffered defense of contributory negligence as a matter of law. In *Seisseger v. Puth,* 213 Iowa 164, 182, 239 N.W. 46, 54 (Iowa 1931), the court stated "As recklessness is more than negligence, it follows that contributory negligence is not an element to be considered or dealt with, either by pleading proof or instruction of the court...." We interpret *Seisseger* as embracing the general proposition that contributory negligence is not a defense where liability is predicated on conduct more cul-

pable than ordinary negligence. *See* 57 Am.Jur.2d, Negligence § 305 at 705; *see also* Restatement (Second) of Torts §§ 50 30; 482(1) (1965). In *Thompson v. Bohlken,* 312 N.W.2d 501, 504–05 (Iowa 1981), the court indicated gross negligence as used in Iowa Code § 85.20, refers to conduct more culpable than ordinary negligence but less than intentional infliction of harm. *Id.* at 504. We do not believe the defense of contributory negligence should be, or is, available in an action where liability is predicated on proof defendant committed "gross negligence amounting to such lack of care as to amount to wanton neglect." Iowa Code § 85.20. The trial court properly concluded contributory negligence of plaintiff was not an available defense.

### IV. Assumption of Risk Defense

Defendant claims the trial court erred by finding defendant had failed to prove the elements of the affirmative defense of assumption of the risk. Specifically, defendant contends the trial court erred in finding plaintiff had not voluntarily assumed the risk by placing his weight on the post-hole digger in close proximity to the rotating PTO shaft. The court held plaintiff was forced to proceed with his work under the dangerous conditions established by defendant's operating and training instructions or face loss of employment.

■ The defendant's contention and the trial court's holding require analysis of the nuances of the assumption of risk doctrine. In *Rosenau v. City of Estherville,* 199 N.W.2d 125, 131 (Iowa 1972), the court stated:

The term "assumption of risk" as used by courts, assumes two different meanings. (1) In one sense, it is an alternative expression for the proposition that defendant was not negligent, i.e., either owed no duty or did not breach the duty owed. This "primary meaning" is illustrated by the case in which an employee is injured by a danger naturally incident to the employment, even though the employer has exercised all reasonable care for his safety. (2) In its "secondary meaning" the term is used where the injured person acted unreasonably in assuming a particular risk, and the defense of assumption of risk coincides with the defense of contributory negligence. In this sense, assumption of risk is an affirmative defense to an established breach of duty.

Involved in this case is the secondary meaning of the term, as defendant all but concedes he was guilty of ordinary negligence. *Rosenau* equates the secondary meaning of assumption of risk with an inquiry into the reasonableness of the injured party's actions and notes it is essentially an inquiry into whether that party was contributorily negligent. Thus we scrutinize plaintiff's actions in this case to determine whether he acted reasonably in following defendant's instructions. Factored into that analysis is the extent of plaintiff's experience around post-hole diggers and other equipment with PTO capability, his age, the standard practice of the employees and the clarity and completeness of defendant's instructions. Viewing the evidence in a light most favorable to upholding the judgment, we conclude, as did the trial court, plaintiff's assumption of the risk was not voluntary. Plaintiff was forced to make a choice between following defendant's incomplete instructions or be fired. We note there is substantial evidence in support of the trial court's conclusion plaintiff would be fired if he did not follow defendant's instruction. We do not believe the facts indicate a voluntary assumption or full appreciation of the attendant risks.

Our conclusion is supported by Restatement (Second) of Torts § 496 E comment c (1965), which states "where defendant is under a duty to the plaintiff, and his breach of duty compels the plaintiff to encounter the particular risk in order to avert other harm to himself, his acceptance of the risk is not voluntary, and he is not barred from recovery.... It is true likewise where the plaintiff is compelled to accept the risk in order to exercise or protect a right or privilege, of which defendant has no privilege to deprive him." Plaintiff in this case had a

right to work in an atmosphere free of unreasonable danger and conduct of co-workers amounting to gross negligence. *See* Iowa Code §§ 88.4, 85.20. Plaintiff was deprived of that right when he was forced to choose between operating the post-hole digger in accordance with his interpretation of defendant's instructions or be fired. Plaintiff's acceptance of the risk was not voluntary and under the circumstances his conduct was reasonable.

### V. Proximate Causation of Herniated Disc

Plaintiff cross-appeals on Judge Denato's finding plaintiff's herniated disc was not proximately caused by the accident. Proximate cause is generally a question of fact to be decided by the trier of fact, and only in exceptional cases will the issue be decided as a matter of law. Iowa R.App.P. 14(f)(10). If the finding has substantial evidentiary support the finding will not be overturned on appeal. *Doggett v. Heritage Concepts, Inc.,* 298 N.W.2d 310, 312 (Iowa 1980). We find substantial evidentiary support for Judge Denato's finding plaintiff failed to carry his burden to prove the accident was the proximate cause of plaintiff's herniated disc. We note there was conflicting expert testimony as to the cause of plaintiff's condition. One doctor stated it was conceivable the injury could have resulted from the PTO accident but he thought it was not likely. We do not believe the trial court's finding on proximate cause lacks substantial evidentiary support, and it is accordingly affirmed.

AFFIRMED.