**Betty J. TAYLOR and Marvin Taylor, Appellants,**

v.

**Ronald PECK and Kenneth Ladely, Appellees.**

No. 84–1292.

Supreme Court of Iowa.

Feb. 19, 1986.

Rehearing Denied April 18, 1986.

Robert F. Leonard, of Leonard & Johnson, P.C., Sidney, and C.M. Manly, of the Manly Law Firm, Grinnell, for appellants.

Albert L. Harvey and David J. Grace, of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for appellee Peck.

Kenneth L. Butters, Des Moines, for appellee Ladely.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, SCHULTZ and WOLLE, JJ.

McGIVERIN, Justice.

After collecting workers' compensation benefits from her employer, plaintiff Betty J. Taylor, a punch press operator, brought suit against several supervisory employees to recover for injuries sustained by her due to defendants' alleged gross negligence. A loss of consortium claim also was made by her husband. The jury returned a favorable verdict for plaintiffs against one of defendants, Ronald Peck. The district court then granted a judgment notwithstanding the verdict, Iowa Rule of Civil Procedure 243, and conditionally sustained that defendant's motion for new trial, Iowa Rules of Civil Procedure 244 and 248. Plaintiffs appealed, and we transferred the case to the court of appeals. That court reversed the district court ruling and reinstated the jury verdict. We granted defendants' application for further review. We now vacate the court of appeals decision and affirm the district court ruling granting defendant Peck judgment notwithstanding the verdict.

On September 19, 1975, plaintiff Betty Taylor was employed by Dieomatic Inc., in Montezuma, when she suffered a severe personal injury during the course of her employment. Plaintiff was a punch press operator on a Brown-Boggs press machine which was set up with a die to punch out metal forms. This particular press had a set of two palm buttons both of which, for safety reasons, had to be depressed by the operator in order to run the machine. In addition to holding down the two palm buttons, the operator was to watch the metal parts coming out of the press to make sure they were being ejected properly. At the time of Betty's injury, the left palm button was weighted with a block of steel to keep it continuously depressed which permitted the press to begin operating when only the right palm button was pushed.

The Brown-Boggs press that plaintiff was operating had a pin in the die that was working loose periodically. In order to prevent damage to the machine, plaintiff was instructed by her foreman, defendant Kenneth Ladely, to stop the press from operating, or shut if off, every ten minutes and stick her hand up into the die to insure that the pin remained tight. On the morning of the injury, defendant Ronald Peck, vice-president of Dieomatic Inc., and general manager of the Montezuma plant, walked by plaintiff at her press and asked if Ladely had instructed her to check the die pin. Plaintiff replied that she had been so instructed.

The injury occurred several hours later. The machine was stopped, and Betty was reaching up into the die to check the pin. The right palm button apparently was unintentionally or accidentally activated which caused the machine to start up and to severely injure Betty's right hand.

Plaintiff Betty Taylor received workers' compensation benefits from her employer, Dieomatic. Iowa Code ch. 85 (1975). On September 9, 1977, she brought suit against three supervisory employees, alleging that her injuries resulted from the gross negligence of these employees who had instructed her to check the malfunctioning punch press by periodically inserting her hand into the die. Betty's husband, Marvin Taylor, joined in the action seeking damages for loss of consortium based on her injury. Plaintiffs alleged defendants' gross negligence amounted to such lack of care as to amount to wanton neglect for the safety of Betty. *See* Iowa Code § 85.20.

The action against one defendant, the plant manager, was dismissed at trial after plaintiffs completed their evidence, Iowa Rule of Civil Procedure 216, and the jury found in favor of a second defendant, the foreman Ladely. However, the jury found against the third defendant, Ronald Peck, and awarded plaintiffs a total of $425,000 in damages.

After timely motion, which incorporated by reference the grounds urged in Peck's prior motion to dismiss or for a directed verdict made at the close of all evidence, the district court granted defendant Peck a judgment notwithstanding the verdict. Iowa R.Civ.P. 243. The court also conditionally granted him a new trial in the event the judgment would be vacated or reversed. Iowa R.Civ.P. 244 and 248. Plaintiffs appealed, and we transferred the case to the court of appeals. That court reversed the district court ruling and reinstated the jury verdict in favor of plaintiffs. We then granted defendant Peck's application for further review. Defendant Ladely also joined in the application, asserting only that the court of appeals opinion reinstating the jury verdict against Peck should have explicitly affirmed the district court judgment upon the favorable verdict for Ladely.

The controlling issue presented by the parties is whether there was substantial evidence to support the jury's finding that defendant Peck had been grossly negligent amounting to wanton neglect for plaintiff Betty Taylor's safety. Because of our disposition of that issue, we need not reach the other questions presented by the parties.

Initially, we note that the district court in its ruling granting defendant Peck judgment notwithstanding the verdict held *sua sponte* as one of its grounds that Peck was not a co-employee of plaintiff Betty Taylor and, thus, could not be held liable under the workers' compensation statutes for gross negligence. *See* Iowa Code §§ 85.20 and .61. The court of appeals found that the broad definition of an "employee" found in Iowa Code section 85.61(2) included a supervisory person such as Peck within its scope and, thus, ruled the district court erred as to that ground. Iowa Code § 85.61(2). On further review, Peck does not challenge that ruling. We assume without deciding, for the balance of our discussion, that Peck and Betty Taylor were co-employees for the purposes of Iowa Code section 85.20.

I. *Substantial evidence of Peck's gross negligence.* The determinative question is whether there was sufficient evidence of gross negligence by defendant Peck to support the jury verdicts for plaintiffs. This issue was raised in Peck's motion for directed verdict, which the court overruled, and in his motion for judgment notwithstanding the verdict, which the court sustained.

The principles applying to our review of a ruling on a motion for judgment notwithstanding the verdict are stated in *Valadez v. City of Des Moines*, 324 N.W.2d 475, 477–78 (Iowa 1982), and need not be repeated here.

■ The Workers' Compensation Act, Iowa Code chapter 85, provides the exclusive remedy for injured employees against employers and, with one exception, against co-employees. However, the statute provides for imposition of liability on a co-employee for injuries sustained due to gross negligence amounting to such a lack of care as to amount to wanton neglect for the safety of the claimant. Iowa Code section 85.20 (1975) provides:

> Rights of employee exclusive. The rights and remedies provided in this chapter or chapter 85A for an employee on account of injury or occupational disease for which benefits under this chapter or chapter 85A are recoverable, shall be the exclusive rights and remedies of such employee, his personal or legal representatives, dependents, or next of kin at common law or otherwise, on account of such injury or occupational disease against his employer; or any other employee of such employer, provided that such injury or occupational disease arises out of and in the course of such employment *and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.*

(Emphasis added.)

Under this section, the theory for imposing liability on a co-employee is based on gross negligence in the form specified by section 85.20, not simple or ordinary negligence. Therefore, we must determine whether the record shows substantial evidence of such gross negligence by defendant Peck. If not, then section 85.20 serves to bar this action.

■ In *Thompson v. Bohlken*, 312 N.W.2d 501 (Iowa 1981), we considered the term "gross negligence" as it is used in Iowa Code section 85.20.[1] We articulated a three-part test which must be met in order to establish "gross negligence amounting to such lack of care as to amount to wanton neglect" under Iowa Code section 85.-20. We stated that the elements necessary to establish gross negligence by the co-employee toward the claimant were:

(1) knowledge of the peril to be apprehended;

(2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and

(3) a conscious failure to avoid the peril.

*Id.* at 505.[2]

In *Thompson,* a plaintiff who severed the fingers on his left hand while operating a press sought recovery from the plant manager for gross negligence under section 85.20. The press in that case could be operated by either a foot or hand control. The operator of the press was instructed and required to advance the metal through the press by using a screwdriver. At the time of plaintiff's injury, the press was set for operation via the foot control and the guards on the press which exposed the die area were raised. When the press was not operating, plaintiff was attempting to remove the end of the metal from the ma-

1. Prior to the 1974 amendment to section 85.20, this court allowed recovery by a worker from a co-employee for "simple" negligence in breaching safety-related duties owed to co-employees. *See Thompson v. Bohlken,* 312 N.W.2d 501, 504 (Iowa 1981); *Craven v. Oggero,* 213 N.W.2d 678, 682 (Iowa 1973).

2. The test we articulated in *Thompson* to establish a co-employee's gross negligence is necessarily a stringent one because undesirable consequences could result from improvidently holding a co-employee liable to a fellow employee. As some commentators and courts have noted, when an employee is held liable to another the main cost of injury to an employee of a business could be unreasonably shifted from the employer, where the workers' compensation act places it, to a fellow employee, where the act does not place it. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 72.22 (1983). If the fellow employee who was held liable to a co-employee was indemnified by his or her employer, such an employer could be burdened with common law damages beyond the employer's statutory workers' compensation liability or with the expense of carrying insurance to cover the personal liability of all supervisory personnel. *See Miller v. Muscarelle,* 67 N.J.Super. 305, 321, 170 A.2d 437, 445–46 (1961). Therefore, in order to establish substantial evidence of gross negligence under section 85.20, all requirements of the test listed in *Thompson* must be met.

chine with his hand when the press somehow was activated and plaintiff's hand was severely injured.

We did not find "gross negligence amounting to such lack of care as to amount to wanton neglect," Iowa Code section 85.20, although the defendant plant manager knew

> the guard on the press in question was maintained at a height sufficient to allow entry of the operator's hand, that the key for changing the operational mode was usually left in the press, and that the access door to the foot control switch was propped open for easy access. There was also evidence that although [defendant plant manager] was present in the press room when presses were operated without adequate guarding, he failed to respond by providing guards or enforcing safety rules for their operation. Another employee, it was shown, lost several fingers in a press before Thompson's injury, and other, less serious injuries also had occurred in [company] presses.

*Id.*

This was insufficient evidence to show that defendant knew, or should have known, that such an accident was probable because no other accidents had occurred on the same press under similar circumstances. *Id.* We also noted that "no safety inspection had put [defendant] on notice of any defect in the press." *Id.*

On the other hand, our court of appeals held gross negligence on the part of a supervisory co-employee was established in *Larson v. Massey-Ferguson, Inc.,* 328 N.W.2d 343 (Iowa Ct.App.1982). In *Larson,* plaintiff's immediate supervisor or foreman had instructed his crew to "put [their] weight" on an *operating* post-hole digger, and plaintiff became entangled in the unshielded, rotating shaft of the auger. The court of appeals found substantial evidence of defendant foreman's gross negligence because:

> The evidence is uncontroverted defendant knew of the danger associated with an unshielded [power take-off] PTO shaft

and the reasons underlying the subsequently issued OSHA regulations requiring guards to shield the rotating PTO shafts. Defendant knew his order required plaintiff to work in close proximity to the unshielded PTO shaft and that injury was probable whenever working near unshielded moving parts. This is evident in that defendant warned his crew to stay clear of the moving portions of the PTO. Despite the obvious danger associated with an unshielded PTO shaft, defendant instructed his crew to put weight on the auger, which required them to work close to the PTO. Thus, defendant consciously disregarded the obvious peril in ordering his crew to put weight on the auger.

*Id.* at 346.

However, in the present case, defendant Peck did not personally or specifically instruct Betty to place her hand into the die to check the loose pin. The jury found in its special verdict, Iowa Rule of Civil Procedure 203, that the foreman Ladely, Betty's immediate supervisor, who had given her the instructions on putting her hand into the die to check the loose pin when the machine was shut off or not operating, was not grossly negligent. Plaintiffs do not contest this finding on appeal.

Therefore, we believe the circumstances that existed at the time of Betty's injury, which plaintiffs rely upon to prove defendant Peck's conduct amounted to gross negligence under section 85.20, are more similar to those which we held to be insufficient to establish gross negligence in *Thompson* than those which were present in *Larson.* Although the press operator in *Thompson* was instructed to advance metal through the press, when it was operating, with a screwdriver, and here Betty was instructed by Ladely to place her hand in the press when it was shut off or not operating, such a distinction is not sufficient for a result different from the one we reached in *Thompson.* Although the evidence in both cases may suggest a want of ordinary care on the part of both supervisors, recovery against a co-employee is pre-

cluded under section 85.20 on the basis of simple negligence of the co-employee. Instead, proof of gross negligence under the criteria stated in *Thompson* is necessary to warrant recovery under section 85.20.

In this case, there had not been any previous accidents on the Brown-Boggs press, nor had any safety inspections alerted Peck of any danger or malfunction concerning activation of the machine. There is no evidence that Peck knew the left palm operating button was weighted down at any material time. Further, defendant Peck did not instruct Betty to put her hand into the die. At trial, Peck was asked by plaintiffs' counsel whether the probability of injury was greater when a person put his or her hand into the die than it was when a person did not do so. Peck responded affirmatively to this question. However, there was no evidence that Peck knew this result was probable as opposed to possible, when the machine was *stopped or not operating,* or the palm press buttons were not both being depressed or activated.

We further note that it is a fair inference from this record that in the normal course of experience and work many employees and repairmen place their hands in portions of machines, when stopped or not operating, to check or tighten possible loose parts. The procedure ordinarily is not dangerous when the machine is stopped but can be if the machine is in operation.

Therefore, for these reasons we conclude, as did the trial court, that there is insufficient evidence of gross negligence under section 85.20 to generate a jury question and impose liability on defendant Peck. The district court correctly sustained defendant Peck's motion granting Peck a judgment notwithstanding the verdict in this case.

II. *Disposition.* Defendant Ladely asks that, based on the jury verdict in his favor, we affirm the district court judgment for him. Plaintiffs also appealed from that judgment but now state they have no objection to the judgment.

Therefore, we vacate the decision of the court of appeals. We affirm the trial court ruling granting judgment notwithstanding the verdict for defendant Peck and granting judgment for defendant Ladely based on the jury verdict for Ladely.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.