# IN THE COURT OF APPEALS OF IOWA

No. 21-1971
Filed February 8, 2023

**FANTASIA JACOBS, Individually and as parent and natural guardian of her minor children C.J.J., T.F., C.J.F., A.J.F., and CURREY JACOBS-MILLER,**
    Plaintiffs-Appellants,

**vs.**

**STATE OF IOWA**
    Defendant-Appellee
_____

Appeal from the Iowa District Court for Louisa County, Wyatt Peterson, Judge.

Plaintiffs appeal the district court's grant of a directed verdict to the State. **AFFIRMED.**

Nathaniel D. Staudt and Nicholas L. Shaull of Spaulding & Shaull, P.L.C., Des Moines, for appellants.

Brenna Bird, Attorney General, and Noah Goerlitz, Assistant Attorney General, for appellee State.

Heard by Vaitheswaran, P.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This is a lawsuit by one co-employee (Fantasia Jacobs) against another (Suzanne Frice) attempting to recover damages for injuries sustained on the job. Such claims are generally banned by the exclusivity provisions of Iowa's workers' compensation statute. *See* Iowa Code § 85.20 (2019). However, there is an exception for claims based on injuries caused by another employee's gross negligence. *See id.* § 85.20(2). Jacobs relies on this exception to pursue her claim. During trial of the case, the district court granted a directed verdict dismissing the claims of Jacobs and her children[1] after finding that Jacobs failed to establish Frice acted with gross negligence. Jacobs appeals.

## I. Background Facts and Prior Proceedings

Jacobs began working for the Iowa Vocational Rehabilitation Services (IVRS) Burlington office in the summer of 2015. IVRS is a state program intended to help individuals with disabilities "which cause[] major problems in getting, preparing for, or keeping a job" and require "vocational rehabilitation services to be able to work." Eligible individuals are classified into one of three groups: most significantly disabled;[2] significantly disabled; and others eligible.

Jacobs started out as a rehabilitation assistant. That position required her to assist counselors and associates with whatever they needed as well as some clerical work. Frice was the supervisor of the Burlington office. When Jacobs

---

[1] When referring to Jacobs while discussing the underlying facts and her trial testimony, we intend to reference Jacobs alone. However, when referring to Jacobs within the context of this appeal, we intend to refer to all plaintiffs for ease of readability.

[2] Individuals classified as most significantly disabled receive services immediately.

started, she received training from Frice and other people who Frice directed to train her.

Eventually, Jacobs got the opportunity to work as an assistant for a trial period, with the expectation that Jacobs would be promoted to the position of rehabilitation associate. Jacobs was given her own caseload after another employee resigned. However, she was not permitted to determine a person's eligibility for IVRS. Instead, those determinations were made by either a counselor or supervisor, like Frice.

N.F., a high school student, inquired about IVRS. Because Jacobs was assigned to the district, N.F. would be assigned to her caseload should he begin services. In February 2017, Jacobs met with N.F. and his mother to complete an intake interview. Frice completed the eligibility determination for N.F. That process included reviewing N.F.'s medical records, his individual education plan from his school, and a health assessment questionnaire. In doing so, Frice skimmed the records looking mostly for N.F.'s medical diagnosis and the questionnaire for barriers to employment. Frice found him to qualify as a person with the most significant disabilities. N.F. and his mother signed the Applicant's Rights and Responsibilities form, which IVRS required to begin providing services, on April 20. Frice retired that same day.

Jacobs discussed a summer bootcamp program put on by IVRS with N.F. and his mother, and N.F. signed up to participate. N.F. participated in several days of activities without incident, but he was later hospitalized for his mental health for a period of time. Two weeks later, he returned to the summer bootcamp program.

At the end of the last day, August 3, Jacobs dropped students off. N.F. was the last student to be dropped off, so by the end of the trip, only N.F. and Jacobs remained in the vehicle. Without warning, N.F. put on gloves and held a knife to Jacobs's throat. He told her someone named Vince from the hospital was down the road and waiting for her. Jacobs talked to N.F. until he moved the knife down. She then was able to grab her phone and purse as she opened the door and rolled out of the vehicle. She called 911 and hid in a ditch.

Jacobs brought this action. She claims Frice was grossly negligent in a number of respects relating to her failure to act on and inform others of information in N.F.'s medical records. Because the claims against Frice are related to her actions as an employee of the State, the court substituted the State as defendant. *See* Iowa Code § 669.5(2)(a) (providing that a suit against an employee of the state acting within the scope of the employee's employment shall be deemed an action against the state). The matter proceeded to jury trial. Jacobs testified and conceded N.F.'s history of placement at different facilities for behavioral issues and his history of suicide attempts were not uncommon among the individuals who qualified for IVRS. She explained, "unfortunately, we came across some pretty b[izarre][3] histories of individuals." Frice testified that she was not aware of anything like this incident happening anywhere in the state before.

At the close of Jacobs's case, the State moved for directed verdict. The court granted the State's motion. Jacobs appeals.

---

[3] This passage from the transcript reads "unfortunately, we came across some pretty bazaar histories of individuals." We assume this is a transcription error resulting from "bizarre" and "bazaar" being homonyms. We believe "bizarre" was the intended word here.

**II.      Scope and Standard of Review**

We review directed verdicts for legal error.  *Rumsey v. Woodgrain Millwork, Inc.*, 962 N.W.2d 9, 20 (Iowa 2021).  We consider "'the evidence in the light most favorable to the nonmoving party to determine whether the evidence generated a fact question' that warranted submitting the issues to a jury."  *Id.* (citation omitted).  Directed verdict is only warranted if there is not "substantial evidence to support the elements of the plaintiff's claim."  *Id.* (citation omitted).  The district court should not grant a directed verdict if there is substantial evidence to support each element of the claim."  *Id.*

**III.      Discussion**

This case hinges on Iowa Code section 85.20(2).  It provides in relevant part:

> The rights and remedies provided in this chapter, chapter 85A, or chapter 85B for an employee . . . on account of injury . . . for which benefits under this chapter, chapter 85A, or chapter 85B are recoverable, shall be the exclusive and only rights and remedies of the employee . . . , the employee's . . . legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury . . . against any of the following:
> . . . .
> 2. Against any other employee of such employer, provided that such injury . . . arises out of and in the course of such employment and is not caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another.

Iowa Code § 85.20.  The parties agree Jacobs had to establish Frice acted with gross negligence in order to recover on her claim.

Gross negligence refers to conduct that, "while more culpable than ordinary inadvertence or unattention, differs from ordinary negligence only in degree, not kind."  *Thompson v. Bohlken*, 312 N.W.2d 501, 504 (Iowa 1981).  *Thompson* set

out three elements that must be proved to establish a gross negligence claim under section 85.20: "(1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of danger; and (3) a conscious failure to avoid the peril." 312 N.W.2d at 505. "Allegations of gross negligence carry a high burden of proof, and a plaintiff must satisfy all three elements before liability can attach." *Anderson v. Bushong*, No. 12-0640, 2013 WL 530961, at *3 (Iowa Ct. App. Feb. 13, 2013) (citation omitted). This test is "necessarily a stringent one because undesirable consequences could result from improvidently holding a co-employee liable to a fellow employee." *Juarez v. Horstman*, No. 0-990, 2011 WL 441523, at *2 (Iowa Ct. App. Feb. 9, 2011). Specifically, "when an employee is held liable to another[,] the main cost of the injury . . . could be unreasonably shifted from the employer, where the workers' compensation act places it, to a fellow employee, where the act does not place it." *Walker v. Mlakar*, 489 N.W.2d 401, 405 (Iowa 1992) (quoting *Taylor v. Peck*, 382 N.W.2d 123, 126 n.2 (Iowa 1986)). "If the fellow employee who was held liable to a co-employee was indemnified by his or her employer, such an employer could be burdened with common law damages beyond the employer's statutory workers' compensation liability." *Id.* (quoting *Taylor*, 382 N.W.2d at 126 n.2).

As to the first step of the *Thompson* test, a jury arguably could find Frice had "knowledge of the peril to be apprehended." 312 N.W.2d at 505. Frice testified she reviewed N.F.'s medical records, though she could no longer remember what portions she specifically read while making her eligibility determination. Records from May and June of 2016 contain reports N.F. "describe[d] himself as out of control" and having "'creepy creepy' thoughts," "intrusive sexual thoughts," "rape

fantasies," and "concern[s] that his sexual urges are too strong and not controllable at times." He also reported he would "black[] out" and then be unsure of the difference between fantasy and reality, but he confirmed he did not want to hurt anyone. A medical report from June 2016 also noted N.F. disclosed that "he has follow[ed] girls," and "has a pattern of following girls he finds attractive," though "[h]e under[stood] that the behavior is not appropriate and would like to stop." So viewing the evidence in the light most favorable to Jacobs, a jury could find Frice read these portions of the medical records when she made her eligibility determination, she had knowledge of N.F.'s thoughts of violence that he struggled to control, and she knew they could lead to violence.

However, Jacobs failed to establish the second element as a matter of law. That element required her to establish Frice had "knowledge that injury [was] a probable, as opposed to a possible, result of danger." *Id*. This second element is typically "determinative" as "it is exceptionally difficult for plaintiffs to prove that the defendant had the requisite knowledge an injury was *probable*, as opposed to possible, under the circumstances." *Ganka v. Clark*, No. 18-1397, 2019 WL 6358301, at *2 (Iowa Ct. App. Nov. 27, 2019). To satisfy this second element, "[p]laintiffs must show that the defendants knew their actions would place their coemployee in imminent danger, so that someone would more likely than not be injured by the conduct." *Hernandez v. Midwest Gas Co.*, 523 N.W.2d 300, 305 (Iowa Ct. App. 1994).

Jacobs cannot satisfy this element on this record. At trial, Jacobs conceded it was not uncommon for IVRS clients to have histories like N.F. and some have

"pretty b[izarre][4] histories." Frice testified that she was not aware of anything like this incident happening anywhere in the state before. Jacobs did not present any evidence of IVRS workers being attacked previously to refute that testimony. So we are left with an IVRS client with a background that is not uncommon and evidence that no IVRS client has attacked a IVRS worker before. Jacobs treats N.F.'s attack of her as an inevitability because they were alone together. But the record makes clear this event was an anomaly—an outlier—rather than a probability. There is no contradictory evidence in the record.

Still, Jacobs complains that Frice should have specifically told her to never be alone with N.F. and develop a safety plan to specifically protect against N.F. But the trial record shows Frice had a safety policy for her staff to meet clients in public places and carry a cell phone. Moreover, we note N.F. and his mother signed the required paperwork for IVRS to begin services on Frice's last day before her retirement, and Frice was out of the office at a job fair that day. So she did not know with certainty that Jacobs, or anyone, would be working with N.F. prior to her retirement. Nor would she have anticipated the need to warn Jacobs to not be alone with N.F. during transport to and from the summer bootcamp for which N.F. had yet to enroll.[5] So there is also no evidence to support a finding that Jacobs established the third element of the *Thompson* test—that there was a "conscious failure to avoid the peril." 312 N.W.2d at 505.

---

[4] *See* footnote 3.

[5] It is not clear from the record whether the decision to have a IVRS worker transport students to the bootcamp had been made prior to Frice's retirement.

On this trial record, there is no evidence to establish Frice had knowledge that N.F.'s attack on Jacobs was probable under the circumstances or that Frice consciously failed to avoid N.F.'s attack on Jacobs. Accordingly, Jacobs cannot establish Frice acted with gross negligence, and Iowa Code section 85.20(2) forecloses her ability to recover in this action.

**AFFIRMED.**