**Mary Alice WALKER, Administrator of the Estate of Clifton Walker, Deceased, Appellant,**

v.

**Gary MLAKAR and George Pratt, Jr., Appellees.**

No. 91–352.

Supreme Court of Iowa.

July 22, 1992.

Michael K. Bush and John J. Carlin of Carlin, Hellstrom & Bittner, Davenport, for appellant.

Carole J. Anderson and Thomas N. Kamp of Lane & Waterman, Davenport, for appellees.

McGIVERIN, Chief Justice.

Plaintiff Mary Alice Walker, administrator of the estate of her husband, Clifton Walker, appeals from a district court judgment directing a verdict for the defendants in plaintiff's coemployee gross negligence action. We affirm the court of appeals decision and the district court judgment.

I. *Background facts and proceedings.* Clifton Walker was employed as a facilities servicer by the Aluminum Company of America (ALCOA) at its Davenport plant. As of the mid–1980's, the physical plant was made up of over 120 buildings covering 107 acres located on 445 acres of ground. These facilities had the capacity to produce over 700 million pounds of aluminum per year. By 1988, the Davenport plant employed approximately 2200 employees.

One of the duties which facilities servicers such as Clifton periodically performed at the Davenport plant was to clean and scrape tunnels located under the plant's numerous aluminum rolling mills. In January 1988, at the direction of his unit supervisor, Clifton and a coworker were performing this task in a dark tunnel under the 144–inch mill when Clifton fell approximately eleven feet into an unguarded dropoff. Clifton died six months later as a result of the injuries he sustained in the fall.

Mary Walker, as administrator in behalf of Clifton's estate, thereafter brought this gross negligence action for his injuries and death against defendants George Pratt and Gary Mlakar. *See* Iowa Code § 85.20 (1989). At the time of Clifton's fall, George Pratt was employed by ALCOA as the manager of safety, health, and environment; Gary Mlakar worked for Pratt as a safety engineer. Mary claimed that defendants Pratt and Mlakar had an independent duty to Clifton and other workers to provide a safe place to work, a duty established by defendants' job descriptions. Those job descriptions required each defendant to, among other things, be familiar with all aspects of the Davenport plant and to identify and remedy potential safety hazards. Mary claimed that defendants knew

or should have known of the poor lighting and unguarded drop-off under the 144–inch mill, and that defendants' failure to identify and remedy the situation amounted to coemployee gross negligence.

At trial, the parties presented extensive testimonial and documentary evidence of the numerous and elaborate safety programs which ALCOA maintained at its Davenport plant. Plaintiff Mary Walker also presented the testimony of several facilities servicers which indicated that there had been numerous complaints about poor lighting under ALCOA's various rolling mills. However, these witnesses conceded that they never told defendants Pratt or Mlakar of the conditions under the mills. Also, it is apparent that none of these witnesses ever utilized any of ALCOA's other injury prevention programs in order to alert defendants or other coworkers of the witness' concerns.

Furthermore, defendants Pratt and Mlakar testified that they did not know an unguarded drop-off existed under the 144–inch mill; Pratt was not aware of any drop-offs under any mills, and Mlakar had never been in any of the tunnels under the plant's mills. The condition under the 144–inch mill had apparently existed for forty years, and plaintiff presented no evidence that any worker had sustained any injury as a result of the condition causing Clifton's injury.

At the close of plaintiff's evidence, defendants moved for a directed verdict in their favor. See Iowa R.Civ.P. 216. Defendants contended that because no evidence established that either defendant was actually aware of the unguarded drop-off where Clifton sustained his injuries, plaintiffs had failed as a matter of law to establish gross negligence pursuant to Iowa Code section 85.20. Plaintiff countered that she did not have to prove that defendants actually knew of the conditions under the 144–inch mill; she asserted that defendants' job descriptions provided *constructive* knowledge of the condition which was sufficient to avoid a directed verdict. However, the district court agreed with defendants' assertions, sustained their directed verdict motions, and entered judgment for defendants.

Upon plaintiff's appeal, we transferred the case to the court of appeals. See Iowa R.App.P. 401. That court affirmed the district court's judgment by operation of law. See Iowa Code § 602.5106(1).

We granted plaintiff's application for further review and now consider the issues raised. See Iowa R.App.P. 402. We consider the evidence in the light most favorable to plaintiff Mary Walker. See Swanson v. McGraw, 447 N.W.2d 541, 543 (Iowa 1989); Iowa R.App.P. 14(f)(2). If no reasonable mind could differ on the directed verdict issue, we must affirm the directed verdict in favor of defendants. See Swanson, 447 N.W.2d at 543.

II. *Coemployee gross negligence.* Our workers' compensation statute is an injured worker's exclusive remedy against an employer or coemployee, thereby providing the employer and coemployee immunity from common law tort liability. See Iowa Code § 85.20. Although an employer is always immune from common law tort liability, an injured worker may maintain a common law tort action against a coemployee to recover for injuries *only* if the employee can establish that his or her injuries were caused by the coemployee's "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." See id.

■ Starting with Thompson v. Bohlken, 312 N.W.2d 501, 505 (Iowa 1981), we have held that there are three elements necessary to establish a coemployee's "gross negligence" under Iowa Code section 85.20: (1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril. We have stringently maintained that an injured worker must prove all of the elements of the Thompson test in order to establish a coworker's "gross negligence" for purposes of section 85.20. See Dudley v. Ellis, 486 N.W.2d 281, 283 (Iowa 1992); Henrich v. Lorenz, 448 N.W.2d 327, 332 (Iowa 1989); Swanson, 447 N.W.2d at 543; Eister v. Hahn,

420 N.W.2d 443, 446 (Iowa 1988); *Woodruff Const. Co. v. Mains,* 406 N.W.2d 787, 789 (Iowa 1987); *Taylor v. Peck,* 382 N.W.2d 123, 126 (Iowa 1986); *see also Larson v. Massey–Ferguson, Inc.,* 328 N.W.2d 343, 346 (Iowa App.1982).

The result we reach in this case depends upon the interpretation given to these three criteria for the particular brand of "gross negligence" required under section 85.20. More specifically, this case presents the question of whether plaintiff properly established the first and third elements under the *Thompson* test. Thus, we must determine whether a coemployee's mere *constructive* knowledge of a condition may constitute "knowledge of the peril to be apprehended," or whether a plaintiff is required to prove that a coemployee *actually* knew of a peril before the coemployee may be exposed to common law tort liability. Correspondingly, we must determine whether plaintiff properly proved that defendants Pratt and Mlakar "consciously failed to avoid" the peril which caused Clifton's injuries.

A. We agree with the statements of the district court directing the verdict in favor of defendants:

> [T]here isn't a scintilla of evidence, ... not a breath of evidence, that these two fellows [defendants] knew that this drop-off existed under that mill.
>
> . . . .
>
> The issue in this case is nothing more than an ordinary negligence action. That's all I've heard, that's all the evidence is. A duty—a failure to comply with the duty.
>
> What makes it something more than an ordinary negligence action is what the Supreme Court has defined as—it isn't just knowledge of the peril, it's a knowledge that the condition exists. It's a knowledge that there is a drop-off there.

And without that, there can't be a *conscious failure* to do something about it.

(Emphasis supplied.)

In other words, plaintiff presented no evidence that defendants Pratt or Mlakar *actually* knew of the drop-off under the 144–inch mill, and without that, defendants could not have *consciously* failed to do something about it.

■ However, we indicated in *Thompson* that a coemployee such as Pratt or Mlakar cannot be found grossly negligent unless the employee "has intentionally done an act of an unreasonable character in disregard of a risk *known to or so obvious* that he *must* be taken to have been aware of it, and so great as to make it highly probable that harm would follow." 312 N.W.2d at 504–05 (quoting W. Prosser, *Law of Torts* § 34, at 185 (4th ed. 1971)) (emphasis supplied). For the reasons that follow, we therefore conclude that an injured worker must prove, in a coemployee "gross negligence" action under Iowa Code section 85.20, that a coemployee actually knew of a peril or hazard; otherwise, there cannot be a conscious failure on the coemployee's part to avoid the peril or hazard and thereby prevent the injured worker's injury. *See Riessen v. Neville,* 425 N.W.2d 665, 668 (Iowa App.1988) (affirming directed verdict for defendant-coemployee where he was not at site of injury, "nor did he have knowledge the project [causing plaintiff's injury] had been commenced").

Plaintiff nevertheless quotes several passages from the Restatement (Second) of Torts which generally support her assertion that a coemployee's mere constructive knowledge may constitute "knowledge of the peril to be apprehended." *See* Restatement (Second) of Torts §§ 12, 500, at 19, 587 (1965); *see also* Prosser & Keeton, *The Law of Torts* § 34, at 213–14 (5th ed. 1984).[1] However, to adopt plaintiff's assertions would result in an inconsistency between the first and third elements of

---

1. Workers' compensation cases from other jurisdictions provide little guidance in our resolution of the issue presently before us because of the different standards employed in other workers' compensation statutes. *See generally* Annotation, *Willful, Wanton, or Reckless Conduct of Coemployee as Ground of Liability Despite Bar of Workers' Compensation Law,* 57 A.L.R.4th 888 (1987); Annotation, *Right to Maintain Direct Action Against Fellow Employee for Injury or Death Covered by Workmen's Compensation,* 21 A.L.R.3d 845 (1968).

*Thompson*'s tripartite test. This is because to allow an employee's mere constructive knowledge of a hazard to satisfy the first element of *Thompson* would be to eviscerate the requirement under the third element that the coemployee must also "consciously fail to avoid the peril" in order to be found grossly negligent. In other words, it is theoretically and factually impossible for an employee to "consciously fail to avoid" a peril if the employee did not *actually* know of it, i.e., one cannot "consciously fail to avoid" a peril of which one only "should have been aware."

■ To require a coemployee to have actual knowledge of a hazard before exposing him or her to tort liability is more consistent with the plain language of section 85.20. Section 85.20 specifically provides that before a coemployee may be exposed to tort liability, his or her gross negligence must constitute "such lack of care as to amount to *wanton neglect* for the safety of another." (Emphasis supplied.) We have said that "wanton" conduct involves, among other things, a realization of *imminent* danger. *Thompson*, 312 N.W.2d at 505. Of course, such a realization is not possible without *actual* awareness of a certain peril or hazard and an almost intentional disregard thereof.

■ B. More important than the precise wording of section 85.20 and the *Thompson* elements, however, plaintiff's assertions are contrary to the policies underlying a strict interpretation of the "gross negligence" exception to the exclusive remedy provision. For us to say that a coemployee's constructive knowledge or constructive "consciousness" of a hazard, without any actual knowledge thereof, is adequate to establish the coemployee's "gross negligence," would be to require plant safety managers and safety engineers to become the insurers of other employees for every potential peril, real or otherwise, within the plant. Of course, the various ways workers could be injured at a plant such as ALCOA's Davenport plant could be endless.

The test we articulated in *Thompson* to establish a co-employee's gross negli-gence is necessarily a stringent one because undesirable consequences could result from improvidently holding a co-employee liable to a fellow employee. As some commentators and courts have noted, when an employee is held liable to another the main cost of injury to an employee of a business could be unreasonably shifted from the employer, where the workers' compensation act places it, to a fellow employee, where the act does not place it. If the fellow employee who was held liable to a co-employee was indemnified by his or her employer, such an employer could be burdened with common law damages beyond the employer's statutory workers' compensation liability or with the expense of carrying insurance to cover the personal liability of all supervisory personnel. Therefore, in order to establish substantial evidence of gross negligence under section 85.20, all requirements of the test listed in *Thompson* must be met. *Taylor*, 382 N.W.2d at 126, n. 2 (citations omitted).

Thus, if an employer reimburses or insures a safety manager or engineer against coworker litigation, the employer must bear the burden of expenses which the workers' compensation statute was designed to eliminate. However, if the employer does not reimburse or insure the safety manager or engineer, then persons in those positions will continually have their personal assets in jeopardy by virtue of the language used in their job descriptions.

C. In sum, we believe that the legislature intended the section 85.20 coemployee gross negligence exception to common law tort immunity to be a narrow one. An injured worker generally is entitled to workers' compensation for injuries without regard to the fault of the worker, employer, or the worker's coemployees. In exchange, the employer and coemployees are given immunity from common law tort liability. However, in cases where a worker is injured by a coemployee's "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of

another," the worker is allowed a tort action against the coemployee. *See* Iowa Code § 85.20. Furthermore, a coemployee may be deemed "grossly negligent" under section 85.20 only when the employee intentionally does an act of a highly unreasonable character. *See Thompson,* 312 N.W.2d at 504–05.

■ Plaintiff here could have established defendants' gross negligence only by showing that defendants *actually* knew of the drop-off but nevertheless ordered or otherwise forced Clifton to confront it. Liability also could have attached if defendants *actually* knew of the drop-off and *consciously* failed to have it covered or fenced-off. The record reveals that neither of the foregoing occurred in this case. Defendants did not actually know of the drop-off under the 144–inch mill and therefore could not have consciously failed to do something about it. It may be that defendants were negligent in not properly doing their jobs, but the workers' compensation statute was designed to provide benefits to plaintiff for just such a case. In any event, defendants' alleged failure to fully perform their job duties cannot constitute gross negligence without a consideration of the factors outlined above.

III. *Circumstantial evidence of actual knowledge.* Plaintiff alternatively contends that the district court erred in directing a verdict in defendants' favor because there was circumstantial evidence of defendants' actual knowledge of the drop-off under the 144–inch mill. We disagree. As outlined in our previous recitation of the facts of this case, defendants Pratt and Mlakar testified that they did not actually know an unguarded drop-off existed under the 144–inch mill. Furthermore, plaintiff presented no evidence that any worker had sustained any injury as a result of the condition causing Clifton's injury.

Plaintiff nevertheless asserts that there was other circumstantial evidence of Pratt and Mlakar's knowledge of the condition under the 144–inch mill sufficient to avoid a directed verdict, including the defendants' job descriptions and the testimony of certain facilities servicers that there had been previous complaints about the lack of lighting under the Davenport plant's numerous rolling mills. However, as we said in division II, defendants' job descriptions are insufficient, standing alone, to constitute "actual knowledge" of the conditions under the 144–inch mill. Furthermore, none of the testifying facilities servicers complained to Pratt or Mlakar about the situation under the mills, and apparently none of them ever utilized any of ALCOA's other injury prevention programs in order to alert defendants or other coworkers of their concerns.[2]

Based upon this evidence, we conclude the district court was correct in directing a verdict for defendants because the evidence wholly failed to establish that either defendant had "intentionally done an act of an unreasonable character in disregard of a risk *known to or so obvious* that he *must* be taken to have been aware of it;" it simply cannot be claimed that defendants were "aware by observation or experience that such injury would be a probable consequence of the operational practices of which [they were] claimed to be aware." *Thompson,* 312 N.W.2d at 504–05 (emphasis supplied).

IV. *Evidentiary rulings.* Finally, plaintiff claims that the district court erred in excluding certain evidence which plaintiff asserts demonstrated that defendants either had "actual" knowledge of the condition under the 144–inch mill, or that defendants "consciously failed to avoid" the hazard which the drop-off presented to work-

---

**2.** We do not mean to imply by these statements that there is a superior duty imposed upon workers to ensure the safety of their own working environments. However, the foregoing facts are relevant to establishing defendants' lack of actual knowledge of a condition (the drop-off) which existed in an obscure and not-often-encountered location below the floor level of the Davenport plant.

We also find unpersuasive plaintiff's argument that the "job safety analysis" on file for the 144–inch mill washdown procedure should have alerted anyone to the unguarded drop-off; nowhere in the analysis is there any indication that this condition even existed.

ers such as Clifton Walker. We discuss these issues only insofar as they bear on plaintiff's failure to establish "gross negligence" in accordance with the elements of *Thompson.* Our review is for abuse of discretion.

■ A. *OSHA regulation.* At trial, plaintiff sought to introduce a regulation promulgated by the occupational safety and health administration (OSHA) as evidence of negligence of defendants Pratt and Mlakar. The regulation provided that "[e]very open sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing...." The district court excluded the regulation.

We agree with the district court's decision and defendants' argument that because there was no other direct or circumstantial evidence that either defendant had *actual* knowledge of the drop-off under the 144–inch mill or that they consciously failed to remedy it, the proffered OSHA regulation could have no effect on that element of plaintiff's claim. Indeed, we have specifically recognized that "not every violation of an OSHA regulation amounts to gross negligence" because a "person can violate an OSHA regulation without consciously doing so." *See Eister v. Hahn,* 420 N.W.2d 443, 445 (Iowa 1988) (affirming district court ruling that OSHA standards are not applicable in an action brought against a coemployee under Iowa Code section 85.-20). *Cf. Wiersgalla v. Garrett,* 486 N.W.2d 290, 293 (Iowa 1992) (evidence of OSHA regulations admissible in coworker litigation arising outside of Iowa Code chapter 85). The regulation was therefore irrelevant and its exclusion affected no sub-

stantial right of plaintiff. *See* Iowa R.Evid. 103(a), 401, 402.[3]

■ B. *Other injury prevention measures.* Plaintiff also sought to introduce at trial the report of a "fall prevention team" composed of ALCOA employees, including defendant Mlakar. The report was prepared subsequent to Clifton's fall and lists several hundred areas of the Davenport plant where projects could be undertaken apparently to prevent falls or other injuries. Plaintiff offered the report as evidence of defendants' "conscious disregard" of their job responsibilities. The district court excluded this evidence.

We agree with the district court's decision excluding this report for basically the same reasons we agree with its decision excluding the OSHA regulation. Because plaintiff presented no direct or circumstantial evidence of defendants' actual knowledge of the drop-off causing Clifton's injuries, plaintiff was precluded from introducing the report to establish a "conscious disregard" thereof or of defendants' job responsibilities. Indeed, plaintiff concedes in her application for further review that if this were a "simple negligence" case, the report would be irrelevant. We fail to see how it should somehow become relevant because this is a coemployee "gross negligence" case.

Furthermore, as we indicated in division II, the fact that the fall prevention report may demonstrate that defendants did not fully perform their job responsibilities is of no consequence to any issue in this case; conditions at other areas of the Davenport plant were irrelevant to establishing defendants' actual knowledge or conscious disre-

---

3. Plaintiff cites authority for the proposition that a duty of safety may be delegated from an employer to an employee and if the employee accepts the delegation, a personal duty to his or her coemployees may exist. *See Craven v. Oggero,* 213 N.W.2d 678, 682 (Iowa 1973); *see also Pease v. Zazza,* 295 N.W.2d 43, 45–46 (Iowa 1980) (admitting evidence of OSHA regulations in injured employee's action against his supervisor). However, we specifically stated in *Thompson,* decided after both *Craven* and *Zazza,* that the legislature added the "gross negligence" exception to section 85.20 in response to

our decision in *Craven* recognizing the right to sue coemployees based upon acts of simple negligence in breaching safety-related duties. 312 N.W.2d at 504. Furthermore, neither *Craven* nor *Zazza* has ever been cited by this court subsequent to *Thompson* for the foregoing proposition. As is apparent from the policies underlying a strict interpretation of the "gross negligence" exception to section 85.20, *Taylor,* 382 N.W.2d at 126, n. 2, our statements in *Craven* and *Zazza* must be considered only in conjunction with the liability scheme established by *Thompson.*

gard of the drop-off under the 144–inch mill. *See* Iowa R.Evid. 401, 402.

V. *Disposition.* In sum, we conclude that because plaintiff failed to establish that defendants Pratt or Mlakar actually knew of or consciously disregarded the conditions under the 144–inch mill, the district court properly directed a verdict in favor of defendants. We also agree with the district court that plaintiff failed to adduce any substantial circumstantial evidence of defendants' actual knowledge of the drop-off. Finally, we agree with the district court decisions excluding evidence of the OSHA regulation and the fall prevention report.

Accordingly, we affirm the decision of the court of appeals and the district court judgment.

DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.

All Justices concur except ANDREASEN, J., joined by LAVORATO and NEUMAN, JJ., who dissent.

ANDREASEN, Justice, dissenting.

I respectfully dissent.

Walker's suit was premised on the theory that ALCOA has assigned to the defendant coemployees safety duties of implementing the employer's duty to provide a safe workplace. The basis of the claim centered around the poor lighting in the tunnel and the unguarded pit that Walker alleged the defendants knew about and should have corrected prior to Walker's injury. Walker claimed that the failure to identify and rectify the situation amounts to coemployee gross negligence.

I. *Gross Negligence—Actual and Constructive Knowledge.*

In many of our coemployee gross negligence cases, the coemployees have personally observed the dangerous condition leading to the injury. *See Dudley v. Ellis,* 486 N.W.2d 281, 282 (Iowa 1992) (coemployees working together on same electrical project); *Henrich v. Lorenz,* 448 N.W.2d 327, 333 (Iowa 1989) (many of the coemployees had operated the butt skinner); *Swanson v. McGraw,* 447 N.W.2d 541, 542 (Iowa 1989) (coemployees knew of rip in injured worker's clothing); *Eister v. Hahn,* 420 N.W.2d 443, 444 (Iowa 1988) (coemployee working on same combine as injured worker); *Woodruff Constr. Co. v. Mains,* 406 N.W.2d 787, 789 (Iowa 1987) (coemployee working on same roof as injured worker); *Taylor v. Peck,* 382 N.W.2d 123, 124 (Iowa 1986) (coemployee asked if injured worker had been directed to perform specific act, which when done caused the injury); *Thompson v. Bohlken,* 312 N.W.2d 501, 505 (Iowa 1981) (coemployee knew about protection devices on specific machine).

As the majority notes, the thrust of Walker's argument is that, because we have relied upon section 500 of the Restatement (Second) of Torts (1965) in the majority of our gross negligence cases, we have implicitly adopted a constructive knowledge standard as to the first *Thompson* element. *See Henrich,* 448 N.W.2d at 333; *Woodruff,* 406 N.W.2d at 790; *Thompson,* 312 N.W.2d at 505.

I agree with Walker's argument that section 500 itself provides for a constructive knowledge standard. Section 500 of the Restatement provides:

**Reckless Disregard of Safety Defined**

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or *having reason to know* of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

(Emphasis added.) Section 12 of the Restatement defines the term reason to know:

[t]o denote the fact that the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

Clearly, the Restatement's reason-to-know definition is a constructive knowledge standard.

Further support for a constructive knowledge standard in coemployee gross negligence cases is to be found in W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 34, at 213 (5th ed. 1984) [hereinafter *Prosser & Keeton*]. We have previously cited with approval the following language in many of our coemployee gross negligence cases:

> The usual meaning assigned to "willful," "wanton," or "reckless," according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences.

*Prosser & Keeton* § 34, at 213, *cited in Henrich*, 448 N.W.2d at 332–33; *Swanson*, 447 N.W.2d at 543; *Eister*, 420 N.W.2d at 445–46; *Woodruff*, 406 N.W.2d at 790; and *Thompson*, 312 N.W.2d at 504–05.

> The *Prosser & Keeton* citation continues: Since, however, it is almost never admitted and can be proved only by the conduct and the circumstances, an objective standard must of necessity in practice be applied. The "willful" requirement, therefore, breaks down and receives at best lip service, where it is clear from the facts that the defendant, whatever his state of mind, has proceeded in disregard of a high and excessive degree of danger, either known to him or *apparent to a reasonable person in his position.*

*Prosser & Keeton* § 34, at 213–14 (emphasis added). Again, the emphasized language is in support of a constructive knowledge standard.

I think it clear from the Restatement and *Prosser & Keeton*, that knowledge of the peril to be apprehended can be either actual or constructive. Our reliance upon these authorities incorporates both the actual and constructive knowledge standard.

This conclusion is in line with some of our other decisions regarding determina-

tions of "gross negligence." *See, e.g., Krell v. May*, 260 Iowa 518, 149 N.W.2d 834 (1967), and cases cited therein (discussing gross negligence in the context of the automobile guest statute). In *Krell* we defined the elements necessary for recovery in a guest statute case much the same way we describe the elements necessary to prove a coemployee gross negligence case. *Id.* at 520, 149 N.W.2d at 836. Most importantly, however, in *Krell* we specifically set forth a standard of both actual and constructive knowledge. We said: "There must be evidence of defendant's knowledge, actual or *chargeable....* There *must be an awareness, actual or constructive of the unusual danger presented by the circumstances....*" *Id.* (emphasis added) (citing cases).

My conclusion, that constructive knowledge is sufficient in coemployee gross negligence cases, is not a new development in the law. It is supported in the authorities on the subject, and we have recognized it in other highly similar contexts.

Further, we have recognized that constructive knowledge may be used to establish the second element of coemployee gross negligence under section 85.20. *See, e.g., Alden v. Genie Indus.*, 475 N.W.2d 1, 2 (Iowa 1991) ("In short, the plaintiff must show that the defendant knew or should have known that his conduct placed the plaintiff in a zone of imminent danger."); *Thompson*, 312 N.W.2d at 505–06 ("there was no evidence that under the facts known or which should have been known ... such an injury was *probable.*").

I do not buy into the majority's assertion that without actual knowledge in the first *Thompson* element there could be no conscious failure to avoid the peril under the third element. I believe the requirement that Walker prove a conscious failure to avoid the peril is an objective standard. It may be proved by conduct and circumstances.

The defendants, as safety manager and engineer, were required to identify and remedy potential safety hazards. Defendant Mlakar had been employed as ALCOA's safety engineer for eight years.

Apparently, the hazard in the tunnel existed for this eight-year period.

It is not an absolute defense for the defendants to assert they could not consciously fail to avoid the peril because they were not actually aware of the hazard. The defendants cannot avoid the responsibility by intentionally avoiding discovery of the peril. Their conscious failure to inspect the plant operations to identify and remedy the obvious peril in the tunnel may satisfy the requirement of the third element.

## II. *Evidentiary Rulings.*

### A. Exclusion of OSHA Regulations.

Walker attempted to have an OSHA regulation entered as evidence during the trial. The regulation, plaintiff's exhibit 21, was entitled "Guarding floor and wall openings and holes" and provided, "(1) Every open sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing ... on all open sides...." The regulation was offered as evidence of negligence.

A "violation of an OSHA standard by an employer is negligence per se as to the employer's employee." *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 315 (Iowa 1992) (citing *Koll v. Manatt's Transp. Co.*, 253 N.W.2d 265 (Iowa 1977)). *See also Wiersgalla v. Garrett*, 486 N.W.2d 290, 293 (1992), for a general discussion regarding our rules of admission of OSHA regulations. The coemployees argue this should be the end of the inquiry as they are not the employer. In support, they cite *Eister*, 420 N.W.2d at 445, in which we said: "The trial court correctly concluded that our holding in *Koll* does not apply to claims brought against a coemployee." *Eister* is clear support for the proposition that a coemployee's violation of an OSHA regulation is not negligence per se as to the injured worker's coemployee. *Id.* The question, however, was not presented in *Eister* as to whether the violation could be used as evidence of gross negligence on the part of the coemployee.

In *Johnson*, we restated our long-standing corollary to the negligence per se rule that "a violation [of OSHA regulations] is

*evidence* of negligence 'as to all persons who are likely to be exposed to injury as a result of the violation.'" 481 N.W.2d at 315. *See also Wiersgalla*, 486 N.W.2d at 293. This is the position argued by Walker today, one which is different from the one decided in *Eister.*

As we said in *Eister*, "[c]learly not every violation of an OSHA regulation amounts to gross negligence." 420 N.W.2d at 445. This statement plainly leaves open the possibility that some violations of OSHA regulations by a coemployee *may* amount to gross negligence. To prove gross negligence, the employee must prove both negligence and willful, wanton, or reckless conduct. *See Thompson*, 312 N.W.2d at 504. There, we said: "The term 'gross negligence' is said to be nebulous, without a generally-accepted meaning: It implies conduct which, while more culpable than ordinary inadvertence or unattention, differs from ordinary negligence only in degree, not kind." *Id.* Gross negligence is an aggravated form of negligence. Since we have previously held that gross negligence is only a different degree of negligence, evidence of OSHA regulations should be admissible as evidence of negligence. I would hold that the district court abused its discretion in excluding the OSHA regulation. Evidence of the defendants' negligent conduct should have been admitted. The court's exclusion of the offered evidence was prejudicial to Walker.

### B. Reports of Safety Hazards.

Apparently, in response to Walker's fall and injury, ALCOA undertook a comprehensive review of workplace safety in its plant. The review was conducted by a "fall prevention team" that included Mlakar and culminated in an in-depth report.

The report documented over two thousand places at the plant where there was potential for a fall because of lack of a safety device or because of a defect or problem in an existing safety device. These places were identified as hazards in the report. It is apparent that many of these dangerous places and conditions existed at the time of Walker's injury. The

report listed the various hazards and the status of corrective measures to be taken.

Walker attempted to have the report, exhibit 32, admitted as evidence. He urged the exhibit was proof of the defendants' conscious failure to identify and appreciate the dangerous condition. The district court refused to admit the report on the grounds that it was evidence of a subsequent remedial measure and was thus excludable under Iowa Rule of Evidence 407.

By its own terms, rule 407 acts to exclude evidence of subsequent remedial measures when they are used to prove negligence. The rule also contains listed exceptions to its application. The list of exceptions is illustrative, not exclusive. 7 J. Adams & K. Kincaid, Iowa Practice, *Evidence* § 407.2, at 158 (1988). I believe that allowing such a report into evidence would serve many of the same purposes as the specific listed exceptions.

Accordingly, I believe the report could be properly admitted if offered for purposes other than proving negligence. Such admission would be properly accompanied by an instruction directing that the report was to be used solely as evidence of the defendants' knowledge or awareness of the peril or their conscious failure to identify, rectify or avoid the peril.

III. *Direct Verdict.*

It was error for the district court to direct a verdict for the defendants. When the elements of gross negligence are correctly defined and the offered evidence of defendants' negligence and conscious failure to avoid the peril is considered, reasonable minds can differ on whether the defendants were grossly negligent. In determining the propriety of the directed verdict, we need only deal with the question of what a jury could find, not what the jury should find. *See Osborn v. Massey-Ferguson, Inc.,* 290 N.W.2d 893, 902 (Iowa 1980). I would reverse and remand for a new trial.