# IN THE COURT OF APPEALS OF IOWA

No. 19-0673
Filed October 7, 2020

**DEVON TISOR, Individually, and as the duly appointed administrator of the Estate of Patrick Wayne Tisor, and as natural mother and next friend of K.A.T., a minor, K.D.T., a minor, and K.P.T., a minor,**
    Plaintiffs-Appellants,

**vs.**

**RICHARD HOLLERAUER, WILLIAM HUNTER, JOHN SCHMIDT, DENNIS HEROD, MARK SCHWERDTFEGER, JOE MCCARTHY, AND YET UNNAMED UNKNOWN CO-EMPLOYEES,**
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Des Moines County, John M. Wright,

Judge.


        Devon Tisor appeals the denial of her motion to extend deadline and the

court's grant of summary judgment in favor of defendants.  **AFFIRMED.**


        Steven J. Crowley and Edward J. Prill of Crowley & Prill, Burlington, for

appellants.

        Troy A. Howell of Lane & Waterman LLP, Davenport, and W. Eric Baisden,

Joseph N. Gross, and Richard E. Hepp of Benesch, Friedlander, Coplan & Aronoff

LLP, Cleveland, Ohio, for appellees.


        Heard by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

Devon Tisor appeals the district court's denial of her motion to extend the deadline to resist summary judgment and the court's subsequent grant of summary judgment in favor of coemployees at her late husband's work place.[1]  Because the district court did not abuse its discretion in denying the motion to extend deadline and properly granted summary judgment, we affirm.

### I. Background Facts & Proceedings

Shearer's Foods, LLC, is a manufacturer of snack foods.  Shearer's, which is headquartered in Massillon, Ohio, purchased an existing facility in Burlington, Iowa, in June 2014.  The facility has been an operating bakery for over twenty-eight years.  Between 2014 and 2016, the facility operated thirteen production lines making a variety of cookies and crackers.  Each line had a dedicated team of workers.  The relevant production line for this case produced cookies.

On each production line, cookies or crackers are moved through the production process on a metal conveyor band.  Cookie dough is cut and then moves through the oven and under a sizing roller to ensure uniform height.  The cookies cool down while on the belt, are iced if necessary, and then move to the packaging area.  The cookies have to be within a specific height range to fit properly in the packaging, and the metal sizing roller is approximately half an inch above the band.  The sizing roller is supported by metal pillars on either side of the conveyor band upon which the cookies travel and is powered by a stand-alone

---

[1] Devon Tisor brought suit on behalf of herself, her late husband Patrick's estate, and their children.  We will refer to the plaintiffs collectively as "Tisor."

motor. Both the band and roller average a speed of forty feet per minute. To turn off the sizing roller, a disconnect point is located next to the roller.

Patrick Tisor had worked at the facility since April 2008.[2] Beginning on March 13, 2016, Patrick worked as an oven operator on Line 7, which made an assortment of cookies.[3] Patrick's job duties required him to "monitor product quality and make adjustments to temperatures, exhaust, band speed, sizing rollers, and/or burners to ensure that quality and production standards are met," "perform daily cleaning of the brand brushes/rollers/oven knife and utensils," and "perform daily cleaning and weekly deep cleaning (when applicable)." Although the line was shut down and cleaned in its entirety at the end of each week, if the sizing roller was dirty for some reason on Monday morning, Patrick was expected to clean it. [4]

On December 5, 2016, before production started for the day, Patrick was at work before the rest of his team to start up the line for the week. Patrick was found unconscious with both arms pulled under the sizing roller. When Patrick was found, production had not yet started—the conveyor band was not yet hot and no cookies had been made. No tools, monitors, rags, or other work items were found in the area around Tisor. On December 8, Patrick died as a result of the injuries he suffered.

---

[2] Between 2008 and 2016, the facility was owned by three different companies.
[3] Line 7 had been in the plant for nineteen years.
[4] Tisor's team leader described the process to clean the roller: "[W]e would shut the roller off and you'd have one person on one side and one person on the other and you would wipe it and then move it and clean it until it was clean."

Until Patrick's accident, no employee had been injured by a sizing roller on any of the thirteen production lines at the plant. In the summer of 2015, an employee had been injured while working on the conveyor band on Line 7—the same cookie line Patrick was working on when injured. That incident—which injured two of the employee's fingers—resulted in an inspection of the facility by the Iowa Occupational Safety and Health Administration (IOSHA) for nip or pinch points which could result in amputations.[5] The inspection started with Line 7, then expanded to the rest of the facility.

The 2015 IOSHA report cited Shearer's with inadequate machine guarding, in violation of Iowa Administrative Code rule 875-1910.212(a)(1). The report noted specific locations presenting danger to operators, including some rollers in the facility:

> (j) Line #7, Lane Conveyor P17-045B—The conveyor did not have the nip point guarded between two rollers. The nip point was approximately [forty-five] inches from the floor. An employee was performing maintenance on a machine that was operating.
> (k) Line #10—The APV machine did not have the two pinch points guarded between each of the rotating Stinals roller shafts and the stationary part of the machine. The shafts were approximately [thirty-four] inches from the floor and each had approximately [two] inches on the end of each shaft that were not guarded.
> (*l*) Line #9—The B19-020 Wire Cutter, had unguarded pinch points on both ends of the cookie conveyor belt roller, between the roller and fixed parts of the machine. The roller was approximately [fifty] inches from the floor and [six] inches long. There was an approximate [one-half] inch gap between the roller and stationary metal.

The report did not pinpoint the sizing rollers on any line as presenting a dangerous unguarded pinch point. Shearer's abated the cited violations.

---

[5] A nip point or pinch point is a danger point where rotating or reciprocating parts can pull clothing or body parts into a machine.

On May 23, 2017, Tisor brought a gross negligence suit against four of Patrick's coemployees.

In July 2018, the district court granted a motion by Tisor to continue trial. On August 9, the parties filed a "Stipulated amended trial scheduling and discovery plan." As part of the stipulated plan, the last day to add parties was November 15. Discovery was to be completed by January 8, 2019, with dispositive motions to be filed no later than January 14, 2019, and plaintiffs' resistance due February 14.

On November 14, 2018, after discovery which included depositions in mid-August of the original defendants and fact witnesses, Tisor filed a motion to amend the petition. The district court granted the motion, which dismissed two defendants from the suit and added four higher-level managers as defendants. The coemployee-defendants in the amended petition were Richard Hollerauer, the plant's safety, sustainability, wellness coordinator; William Hunter, maintenance supervisor; Dennis Herod, production manager; John Schmidt, plant director; Mark Schwerdtfeger, vice president of safety, sustainability, and wellness; and Joe McCarthy, senior vice president of manufacturing. Hollerauer and Hunter, the remaining original defendants, answered the amended petition on December 10.

On January 14, 2019, the newly-added defendants filed their answer and all six named defendants filed a motion for summary judgment. As supporting evidence, the defendants all stated in sworn affidavits they did not know of any other employee injured by any sizing roller in the facility and Patrick had never informed them the sizing roller was dangerous.

On January 29, Tisor filed a motion to extend the deadline to respond to the summary judgment motion and requested time to take depositions of the new

defendants. The district court denied the motion to extend, noting Tisor waited until "the last day possible" to add the new defendants, extending the deadline would "provide[ ] the court less time to consider the motion," and the stipulated deadline "indicates [the parties] wanted the court to have sufficient time to consider" dispositive motions. The court ordered Tisor's response be filed by February 14.

On February 25, the parties participated in an unreported hearing on the summary judgment motion. On April 3, the district court ruled on the summary judgment motion. The court determined that, although a question of material fact existed regarding the defendants' actual knowledge of the peril presented by the unguarded sizing roller, nothing in the pleadings indicated injury was a probable result or the defendants' actions created a zone of imminent danger. The court granted summary judgment to the defendants and dismissed the case.

Tisor appeals both the court's denial of the motion to extend deadline and grant of summary judgment.

**II. Standard of Review**

"When a party opposing a motion for summary judgment files a motion requesting continuance to permit discovery, our review is for abuse of discretion." *Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 302 (Iowa 1996). "[G]enerally a nonmoving party should have the opportunity to make discovery prior to hearing and ruling on a motion for summary judgment." *Id.*

We review summary judgment rulings for correction of errors at law. *Alden v. Genie Indus.*, 475 N.W.2d 1, 2 (Iowa 1991). Summary judgment is appropriate when no genuine issues of material fact exist and the movant is entitled to

judgment as a matter of law. *Emp'rs Mut. Cas. Co. v. Van Haaften*, 815 N.W.2d 17, 22 (Iowa 2012). "An issue of fact is 'material' only when the dispute involves facts which might affect the outcome of the suit, given the applicable governing law." *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008).

We review the record in the light most favorable to the nonmoving party to determine whether the movants have met their burden. *C & J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC*, 784 N.W.2d 753, 756 (Iowa 2010). We allow all legitimate inferences that can be reasonably deduced from the record in favor of the nonmoving party. *Feld v. Borkowski*, 790 N.W.2d 72, 75 (Iowa 2010). If reasonable minds could differ on resolution of a material fact issue, summary judgment should be denied. *Id.*

**III. Analysis**

**A. Motion to Extend Deadline.** Tisor claims the district court abused its discretion by denying a motion for extension of time for further discovery before responding to the motion for summary judgment. In the motion's required affidavit attachment, Tisor stated the additional defendants were revealed at an August 23 deposition. In the motion, Tisor requested an open-ended extension pending the completion of the depositions or, at minimum, an extension to March 15.

The court denied the motion, holding Tisor to the August 9, 2018 stipulated trial scheduling and discovery plan. The stipulated scheduling and discovery plan required new parties be added by November 15, discovery conclude by January 8, 2019, dispositive motions to be filed by January 14, and any response be due February 14.

Tisor states she learned of the additional defendants on August 23, but she did not seek to amend the petition until November 14—the day before the stipulated deadline. On that final date to amend, Tisor filed a motion adding four new defendants—Herod, Schmidt, Schwerdtfeger, and McCarthy.[6] The motion was granted on November 28, and Hollerauer and Hunter promptly filed their amended answer on December 10. On January 14, the new defendants filed their answer and all defendants filed a motion for summary judgment.[7]

The stipulated discovery plan required discovery—including depositions—be completed by January 8, 2019. The stipulated plan also required any motion for summary judgment be filed by January 14.[8] Tisor did not file any motion to continue the discovery deadline before that deadline had passed. Rather, it was not until requesting additional time to respond to the summary judgment motion that Tisor asked to reopen discovery.

Discovery had been underway in this case since September 2017. Tisor knew the new defendants might have relevant information as early as August 2018 following the deposition of Hollerauer. Tisor could have asked to depose the new defendants even before amending the petition. She could have ensured an earlier answer by promptly serving the defendants with notice once the motion to amend was granted. Instead, the record does not reveal any attempt to extend discovery or depose any of the new defendants until the end of January—three weeks after

---

[6] Hollerauer, Hunter, and the two dropped defendants did not resist the motion.
[7] Tisor did not serve notice of the petition on the new defendants.
[8] The defendants' summary judgment motion was supported in part by affidavits of the undeposed defendants.

discovery closed. In denying the motion, the court held Tisor to the deadlines to which she stipulated.

Under these circumstances, the court did not abuse its discretion in denying Tisor's motion to extend the discovery deadlines.

**B. Summary Judgment Ruling.** Tisor asserts gross negligence by Patrick's coemployees caused his death.

Our workers' compensation law provides an employee's exclusive remedy against the employer and any other employee for a work injury unless the injury is "caused by [the] other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code § 85.20(2) (2016). This coemployee-gross-negligence exception to common-law tort immunity is narrow. *Walker v. Mlakar*, 489 N.W.2d 401, 405 (Iowa 1992).

In *Thompson v. Bohlken*, 312 N.W.2d 501, 504 (Iowa 1981), our supreme court noted the "wanton neglect" standard under the statute "involves the combination of attitudes: a realization of imminent danger, coupled with a reckless disregard or lack of concern for the probable consequences of the act." "Wanton neglect . . . arises when the actor is indifferent 'as to whether the act will injure another.'" *T.H.E. Ins. Co. v. Glen*, 944 N.W.2d 655, 664 (Iowa 2020) (citation omitted). Indeed, "a coemployee may be deemed 'grossly negligent' under section 85.20 only when the employee intentionally does an act of a highly unreasonable character." *Walker*, 489 N.W.2d at 406.

The *Thompson* court determined three elements are necessary to establish gross negligence amounting to wanton neglect: "(1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible,

result of the danger; and (3) a conscious failure to avoid the peril." 312 N.W.2d at 505. Gross-negligence claims carry a high burden of proof, and "all three elements must be proven before liability can attach." *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 321 (Iowa 1992).

*(1) Knowledge of the peril.* For the first element, the coemployee must have actual knowledge of the potential peril, not just constructive knowledge. *Walker*, 489 N.W.2d at 405 (noting that allowing constructive knowledge to satisfy the first element would "eviscerate the requirement under the third element that the coemployee must also 'consciously fail to avoid the peril'" (citation omitted)). For the coemployee to exhibit wanton neglect, the coemployee must have a realization of imminent danger, which "is not possible without *actual* awareness of a certain peril or hazard and an almost intentional disregard thereof." *Id.*

The district court concluded there was a genuine issue of material fact as to whether all the defendants had knowledge of the peril posed by the nip point at the sizing roller. Hollerauer and Hunter both discussed knowing about and having training on nip points. Hollerauer accompanied the IOSHA officer in touring the facility in 2015, and Schwerdtfeger was part of the citation and abatement process for the IOSHA report. Whether Hollerauer, Hunter, and Schwerdtfeger had knowledge the sizing roller presented a dangerous nip point was a fact question for a jury.

With regard to Schmidt, Herod, and McCarthy, Tisor's allegations do not include specific evidence of actual knowledge of peril. Rather, the petition asserts that part of their jobs was "to ensure employees were doing their jobs safely," and the defendants were present in the facility at some point.

Considering all the evidence and drawing inferences in favor of Tisor, we agree that a question of fact exists regarding the actual knowledge of the potential peril by at least some defendants.

*(2) Knowledge that injury is a probable result.* The second element requires a showing the defendant knew their conduct would place their coemployees in imminent danger and injury was more likely than not to be the result. *Alden*, 475 N.W.2d at 2. To meet the second element, "the plaintiff must show that the defendant knew or should have known that his conduct placed the [the injured party] in a zone of imminent danger." *Id.* A "zone of imminent danger" can be shown in two contexts: first, "by proving defendant's actual or constructive awareness of a history of accidents under similar circumstances"; second, "where the high probability of harm is manifest even in the absence of a history of accidents or injury." *Id.* at 2–3. The plaintiff must also show the defendant "knew or should have known" that the defendant's conduct caused the injured party to be in that zone. *Id.* at 3.

> The defendants' knowledge of the actuarial foreseeability—even certainty—that "accidents will happen" does not satisfy *Thompson*. Unless the defendants knew that their conduct would place their coemployees in imminent danger, so that someone would probably—more likely than not—be injured because of the conduct, then the knowledge does not satisfy the essential elements of a section 85.20 gross negligence action as set forth in *Thompson*.

*Henrich v. Lorenz*, 448 N.W.2d 327, 334 n.3 (Iowa 1989).

The district court concluded Tisor's coemployees did not create the peril at the sizing roller and "had no reason to believe that Tisor would be exposed to imminent harm through his duties of starting Line 7 that day." The court considered the IOSHA report and whether a "zone of imminent danger" existed and decided

nothing about the report put defendants on notice that an unguarded nip point on the sizing roller would "probably lead to injury, amputations, or death." With no issue of material fact on the second element, the court granted summary judgment to the defendants.

It is unclear what task Patrick was doing while starting up Line 7 or how his arms were pulled under the sizing roller. The record shows no history of injuries caused by sizing rollers on any of the lines. Therefore, the question is whether the sizing roller created a "zone of imminent danger" where the probability of harm was manifest despite the lack of prior accidents. *See Alden*, 475 N.W.2d at 3.

Despite the thorough 2015 inspection by IOSHA of the facility—and Line 7 in particular—with numerous nip points itemized, Shearer's was not notified the sizing roller on any line presented an open and obvious danger to the employees. None of the notes or the IOSHA report state the sizing roller should have additional guarding added. Despite depositions of a number of Shearer's employees, Tisor could not provide a statement from any of the employees recognizing the sizing roller as an open and obvious danger that would probably cause an injury before Patrick's accident, nor is there evidence that any employee had alerted any of the defendants of concerns relating to a danger presented by the sizing roller. The record does not support a conclusion the defendants had knowledge their conduct presented a "probable" threat of injury. *See Ganka v. Clark*, No. 18-1397, 2019 WL 6358301, at *3 (Iowa Ct. App. Nov. 27, 2019).

Even drawing all reasonable inferences from the record in favor of Tisor, we conclude the record fails to show any defendant knew their conduct would place Patrick in imminent danger and injury was more likely than not to be the result.

Consequently, we find no error of law in the district court granting summary judgement.  We affirm.

**AFFIRMED.**