# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1816
Filed February 11, 2026

———————————

**Damon Stalkfleet,**
Plaintiff–Appellant,

v.

**Edgar Stroughmatt,**
Defendant–Appellee.

———————————

Appeal from the Iowa District Court for Muscatine County,
The Honorable Patrick A. McElyea, Judge.

———————————

**AFFIRMED**

———————————

Gary Dickey and Matthew Sahag of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, attorneys for appellant.

Kent A. Gummert, Alexandra C. Galbraith Davis (until withdrawal), Jessica L. McNamara, of Lederer Weston Craig PLC, West Des Moines, and Andrew C. Johnson of Lamson Dugan & Murray LLP, West Des Moines, attorneys for appellee.

———————————

Considered without oral argument
by Schumacher, P.J., Ahlers, J., and Bower, S.J.
Opinion by Schumacher, P.J.

1

**SCHUMACHER, Presiding Judge.**

Damon Stalkfleet appeals the district court ruling in favor of Edgar Stroughmatt's motion for summary judgment. He asserts there are genuine issues of material fact regarding whether Stroughmatt possessed actual knowledge of peril to be apprehended because of improper training and faulty equipment leading to Stalkfleet's brother's death, based on alleged co-employee gross negligence. He also claims a genuine issue of material fact exists as to whether bystander liability extends to Stalkfleet because he witnessed his brother's injuries. Upon our review, we affirm.

## BACKGROUND FACTS & PROCEEDINGS

Stalkfleet and his brother, Dillon, were a part of a switch operation team at Bakery Feeds railyard in Muscatine, Iowa. A switch operation team's job duties include rearranging rail cars so they can be filled with product and emptied. One of Stalkfleet's work duties was to operate a Rail King railcar mover ("Rail King") to assist in pushing and pulling railcars. Dillon's duty as part of the two-man operation was to act as a "spotter." The Rail King was equipped with an air brake system. To use the air brake, the operator had to connect the brake to a railcar intended to be moved and wait for the air compressor to fill to the appropriate pressure. The railcars also had a wheel brake which required manual force to slow or stop the railcar. The Rail King at Bakery Feeds had non-functioning air brakes.

Bakery Feeds' rail system is connected to the Canadian Pacific rail-line, which transports product to their intended destinations. On Bakery Fields' property, there are two rail-lines, the White Line, a track meant to hold railcars until they are needed to transport product, and the Red Line, which runs uphill to the factory where product is made. There is a switch

where the Red, White, and main lines connect, which allows employees to change which line the cars travel on.

Around two weeks before the incident, Vascik, an employee from another plant, told the operators and spotters that the spotters could no longer ride on the railcars to manually engage the wheel brake. Instead, the employees had to engage the wheel brake from a ground-level position while positioning themselves in front of an oncoming railcar. The employees had been riding the railcars to engage the wheel brake because of the nonfunctional air brakes. In order to manually engage the wheel brake, a spotter had to enter the "red zone," which is the area ten feet in front and behind a railcar and four feet on each side of the tracks. It is common practice for a worker to never enter the red zone while a railcar is moving, and doing so is to "foul the track," which is considered dangerous.

Stalkfleet and another employee complained to management about the dangerous nature of setting a wheel brake from the ground. The response was that if there was a runaway car, to "let it go." After Vascik's instructions, a contractor serviced the Rail King to fix the air brakes, but the brakes still failed on occasion. Stalkfleet admitted later that he did not always test the air brakes to see whether they were working prior to operating the Rail King.

By the time of the incident, Stalkfleet had been operating the Rail King for six years. He was trained on how to use the Rail King by a fellow employee. Stalkfleet, after becoming proficient at operating the Rail King, trained other employees on how to use it. During those six years that Stalkfleet operated the Rail King, no one had been injured.

Stroughmatt was the general manager at the plant. He was responsible for general safety at the plant, but he did not train employees on how to

properly use the Rail King or how to act as a spotter. Stroughmatt's job duties did not include directing operators' and spotters' daily work.

Stalkfleet's brother, Dillon, was working as a temporary employee and had been employed at the site for two years. Stalkfleet had trained Dillon to be a spotter, they worked together as a team, and one of Dillon's duties was to perform the rail switching.

On the day of the incident, Dillon and Stalkfleet were working as a team performing switching operations. That morning, upon the team arriving at work, the Rail King was already attached to a railcar near the factory. Stalkfleet warmed up the Rail King so the compressors on the air brake could build pressure, inspected the Rail King, then filled the attached railcar with product. But Stalkfleet did not connect the air brakes to the railcar. Stroughmatt was not present at the site on this day.

The team's duties that day included several trips with empty and filled railcars being either pushed or pulled by the Rail King. These tasks required switching from the Red and White Lines numerous times. Eventually, Dillon and Stalkfleet needed to push cars down the Red Line. After Dillon made the track switch, he signaled to Stalkfleet to show it was clear to begin pushing the cars. After seeing this signal, Stalkfleet saw Dillon from around twenty feet away, crossing over the track. Stalkfleet thought that Dillon had already set the wheel brake halfway behind the furthest car and was waiting beside the track to fully set the brake when they reached their destination.

Stalkfleet then engaged the Rail King and pushed the cars on the Red Line without stopping until he arrived at the designated area, which was around 300 feet from the rail switch. Stalkfleet waited for Dillon to fully set the hand brake on the furthest car. But Stalkfleet noticed the Rail King and

cars were still moving, so he knew Dillon had not fully set the hand brake. So, he held the hand brake on the Rail King, waiting on Dillon. After waiting for a time, Stalkfleet attempted to contact Dillon on the radio, but the radio was dead. Dillon also did not answer his cell phone. Stalkfleet put the Rail King in reverse, and because of the incline, he was able to stop the Rail King so he could check on Dillon. After seeing various items belonging to Dillon on the ground, Stalkfleet ran to the end of the furthest car, finding Dillon underneath. He realized Dillon had been run over and drug under the railcar. Dillon's injuries were fatal.

Stalkfleet brought claims against Stroughmatt for co-employee gross negligence under Iowa Code section 85.20(2) (2021) of the Iowa Worker's Compensation Act and a reckless-disregard-for-safety claim. Stalkfleet asserted he sustained emotional damages from witnessing his injured brother under the railcar. He alleged that Stroughmatt failed to provide proper equipment and training, leading to the accident and mental injury.[1]

Stroughmatt filed a motion for summary judgment on both claims. The district court granted his motion, concluding that Stalkfleet failed to show a genuine issue of material fact on the co-employee gross negligence claim regarding whether Stroughmatt possessed knowledge of the peril to be apprehended and if he knew injury was a probable rather than a possible result of the peril. The basis of this ruling was that Stroughmatt was not aware of peril to Stalkfleet.

Stalkfleet then filed a motion to reconsider, amend, and enlarge the court's summary judgment ruling. He did not challenge the ruling on the

---

[1] Stalkfleet also brought suit against Darling, the parent company of Bakery Feeds, and other co-employees. Those parties were dismissed with prejudice. Stroughmatt is the remaining defendant.

reckless-disregard-for-safety claim and did not raise his bystander-emotional-distress claim. The district court denied the motion. Stalkfleet now appeals, arguing there are genuine issues of material fact on the co-employee gross negligence claim and the bystander-emotional-distress claim.

## STANDARD OF REVIEW

We review the district court's order granting a motion for summary judgment for correction of errors at law. *DeSousa v. Iowa Realty Co., Inc.*, 975 N.W.2d 416, 420 (Iowa 2022). "In doing so, we 'view the facts in the light most favorable to the nonmoving party.'" *Id.* (citation omitted). "Even if the facts are undisputed, summary judgment is not proper if reasonable minds could draw different inferences from them and thereby reach different conclusions." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544–45 (Iowa 2018) (citation omitted). Stalkfleet "may not rest upon the mere allegations of his . . . pleading but must set forth specific facts showing the existence of a genuine issue for trial." *Id.* at 545 (citation omitted).

## ANALYSIS

### I.    Co-Employee Gross Negligence

Stalkfleet asserts there are genuine issues of material fact concerning Stroughmatt allegedly disregarding perils that placed Stalkfleet and Dillon in a zone of imminent danger where injury was probable, so this claim should have survived summary judgment.

Workplace injuries to employees are governed by the Iowa Workers' Compensation Act, which only allows recovery from co-employees if the injury was "caused by the other employee's gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another." Iowa Code § 85.20(2). To establish "gross negligence" under section 85.20

a plaintiff must show that the co-employee possessed: "(1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril." *Thompson v. Bohlken*, 312 N.W.2d 501, 505 (Iowa 1981).

For the first element, it must be shown that the co-employee possessed actual, and not constructive, knowledge of the potential peril. *Walker v. Mlakar*, 489 N.W.2d 401, 405 (Iowa 1992).

The second element requires "more than a showing of the defendant's actual or constructive knowledge" that their conduct placed the plaintiff in "imminent danger so that someone would probably . . . be injured because of the conduct." *Alden v. Genie Indus.*, 475 N.W.2d 1, 2 (Iowa 1991) (citation omitted). This can be satisfied by evidence showing the defendant "knew or should have known that his conduct placed the plaintiff in a zone of imminent danger." *Id.* Showing of a zone of imminent danger can be shown by two methods: (1) "it can be made by proving defendant's actual or constructive awareness of a history of accidents under similar circumstances," or; (2) "[a] high probability of harm is manifest even in the absence of a history of accidents or injury." *Id.* at 2–3.

The third element is generally reliant on the other elements because "it is theoretically and factually impossible for an employee to 'consciously fail to avoid' a peril if the employee did not *actually* know of it." *Walker*, 489 N.W.2d at 405.

Here, Stalkfleet alleges that he was insufficiently trained and provided nonfunctioning equipment, which shows that Stroughmatt possessed actual knowledge of potential peril and that injury was a probable result of that peril. Starting with the alleged failure to properly train, Stalkfleet argues that this

7

failure can constitute gross negligence, citing *Estate of Zdroik by Zdroik v. Ostrowski*, No. 22-1724, 2023 WL 5602852, at *2 (Iowa Ct. App. Aug. 30, 2023). But while that case mentions that the defendant "may have had a duty to train Zdroik and his crew members on safety procedures," it does not give weight to training procedures in its analysis of the second element. *See Est. of Zdroik by Zdroik*, 2023 WL 5602852, at *2.

Moreover, gross negligence claims cannot be solely based upon improper safety protocols, training, or an identified safety violation after the incident. *See Walker*, 489 N.W.2d at 405 (stating gross negligence claims based on failure to provide a safe working environment absent actual knowledge of peril is insufficient because it "would . . . require plant safety managers . . . to become the insurers of other employees for every potential peril, real or otherwise, within the plant"); *see also Stokes v. Murillo*, No. 23-0289, 2024 WL 1553788, at *3 (Iowa Ct. App. Apr. 10, 2024) ("A safety violation issued after the injury provides no support for the required knowledge . . . ."). The record also does not indicate that Stroughmatt was responsible for training Rail King operators or spotters.[2]

As to the alleged failure to provide proper equipment, Stalkfleet asserts that because Stroughmatt had knowledge of the Rail King's faulty air brakes he consequently possessed actual knowledge of the peril to be apprehended. But Stalkfleet's claim is based upon his witnessing the result of injuries to his brother, not on whether he was in imminent danger or peril.

---

[2] We note that in Stalkfleet's reply brief, he highlights a recent case from our court, *Griffith v. Kulper*. We find the current case to be both factually and legally distinguishable from the facts presented in *Griffith*. And the supreme court recently vacated our court's affirmance of a claim of co-employee gross negligence in such opinion. *See Griffith v. Kulper*, ____ N.W.3d ____, 2026 WL 317927 (Iowa 2026).

The record does not show that Stalkfleet himself was in peril, as he was inside the Rail King during the accident, not in danger of injury due to poorly functioning air brakes. And the record shows that Stalkfleet did not connect the air brakes that day. There is no evidence indicating that Stroughmatt possessed actual knowledge that if an injury occurred to Dillon, Stalkfleet would witness it. It appears the peril to be apprehended was that without working air brakes, an employee *outside* the Rail King was in danger of fouling the track and being injured. This peril did not extend to Stalkfleet, as he was not in danger of being injured by fouling the track. *See Judge v. Clark*, No. 05-1219, 2006 WL 3313794, at *7 (Iowa Ct. App. Nov. 16, 2006) (analyzing a gross negligence claim "under the facts and circumstances of the case" and contextualizing the peril). We agree with the district court that imputation of this knowledge to Stroughmatt would approach constructive knowledge, not actual knowledge as required by precedent. *See Walker*, 489 N.W.2d at 405.

Further, Stalkfleet had operated the Rail King for almost six years without incident even without completely functioning air brakes, was considered proficient, and he had trained several other employees on how to use it. There is no showing that Stroughmatt knew that injury was a probable, as opposed to a possible result of the faulty air brakes. *See id.* at 406. Also, Stalkfleet's argument that utilizing manual operation of the hand brakes, which places an employee in the "red zone" of a railroad, also qualifies as a zone of imminent danger is without merit. *See Est. of Morgan by Morgan v. Union Pac. R.R. Co.*, 20 N.W.3d 232, 243–44 (Iowa 2025) (explaining that a railroad's "red zone" does not equate to a "zone of danger"). Because we find that Stroughmatt did not possess actual knowledge of the peril to be apprehended, there is no genuine issue of material fact that this claim fails on the first element. *See id.*

## II.   Bystander Liability

Stalkfleet asserts that he should be able to recover for the mental distress he sustained because of witnessing the injuries to Dillon and that the "personal injury" language within section 85.20 encompasses physical injuries as well as psychological injuries.

Error was not preserved on this issue. Stalkfleet argues that error was preserved because bystander liability was raised in Stroughmatt's motion for summary judgment and in the district court's order granting Stroughmatt's motion. But the district court did not rule on the bystander liability claim in its order granting summary judgment, Stalkfleet did not raise such in his motion to reconsider, and the district court did not address such in its order on Stalkfleet's motion to amend, reconsider, or enlarge. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised *and decided* by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (emphasis added). Even if the bystander liability issue was raised in Stroughmatt's motion for summary judgment, the district court did not decide the issue.

## CONCLUSION

We affirm the district court's ruling that there are no genuine issues of material fact concerning the elements of co-employee gross negligence and that summary judgment in favor of Stroughmatt was appropriate.

**AFFIRMED.**